1  Vicky Dobrin (WSB #28554)
   DOBRIN & HAN, PC
2  705 Second Avenue, Suite 905
   Seattle, Washington 98104
3  (206) 448-3440

4  Attorneys for Petitioners

5
                UNITED STATES DISTRICT COURT FOR THE
6
                WESTERN DISTRICT OF WASHINGTON
7

8  Concely Mendez Rojas, (A#206-252-965),     )    No.
   LBCM,(A#213-488-490),                      )
9  GHM, (A#213-488-491),                      )
   WJMM, (A#213-488-492).                     )
10                                            )
          Petitioners,                        )
11                                            )
                                              )
12   v.                                       )
                                              )
13 Loren K. Miller,  Director, Nebraska Service )
   Center of the United States Citizenship and )
14 Immigration Services; Ur M. Jaddou,        )    Petitioners' COMPLAINT FOR
   Director, United States Citizenship and    )    DECLARATORY AND
15 Immigration Services;                      )    INJUNCTIVE RELIEF
   Alejandro Mayorkas, Secretary, Department of )
16 Homeland Security,                         )
                                              )
17                                            )
          Respondents.                         )
18 ——————————————————————————————————————————)

19 1.     Through their undersigned attorneys, Petitioners Concely Mendez Rojas ("Ms. Mendez")

20 and her children LBCM, GHM, WJMM, as and for their complaint, hereby allege the following:[1]

21

22                            **INTRODUCTION**

23 2.     Ms. Mendez is a native and citizen of the Dominican Republic who was granted asylum in

24 the United States on July 9, 2019.  When she fled her home country in September 2013, she had to

25 leave behind her three young sons - LBCM, GHM, and WJMM.  After waiting several years for her

26 _____

27      [1]        Because they are minors, Ms. Mendez's children are being referenced by their initials.

28                                    Complaint for Declaratory and Injunctive
                                      Relief

asylum application to be adjudicated by the Seattle Immigration Court, she was finally granted asylum in July 2019.  She was then statutorily eligible to petition for her sons to join her in the United States as derivative asylees.  Shortly after Ms. Mendez was granted asylum, she filed I-730 petitions on behalf of her sons with the United States Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security ("DHS") to reunite her family in the United States.  Those petitions were receipted by the USCIS on August 23, 2019.  To date, though, the USCIS has yet to adjudicate these straightforward petitions, and the agency has not provided any time-frame within which it intends to do so.

3.      Ms. Mendez provided all of the necessary documentation when she filed the I-730 petitions for her minor sons 27 months ago, but Respondents have still not performed their ministerial duty of adjudicating these petitions.  Despite numerous inquiries by counsel, Respondents have repeatedly ignored these inquiries and provided no time-frame within which they intend to carry out their ministerial duty of adjudicating these petitions.  Moreover, the delay is made even more unreasonable because the adjudication of these petitions is now far outside of the agency's own processing times.  According to the agency's stated processing times, it is currently taking between 14.5 and 19 months to adjudicate I-730 petitions, but here Petitioners' petitions have now been pending for about 27 months.

4.      As a result, Ms. Mendez and her three sons remain separated.  Respondents' arbitrary and capricious action is particularly prejudicial in this case because Ms. Mendez's sons are young and have been separated from her since 2013.

5.      In this complaint for declaratory and injunctive relief, Petitioners request that the Court declare Respondents' actions a violation of the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and Respondents' own policies.  As such, they request that the Court order Respondents to immediately carry out their ministerial duty of adjudicating Petitioners' I-730 petitions.

Complaint for Declaratory and Injunctive Relief

**JURISDICTION**

6.      Jurisdiction over the subject matter of this civil action is conferred on this Court by 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treaties of the United States; 5 U.S.C. § 702, as a challenge to agency action under the APA; 28 U.S.C. § 1361, as an original action seeking a writ of mandamus; and 28 U.S.C. § 2201 and 2202, as a civil action seeking a declaratory judgment.

7.      Although this Court would lack jurisdiction over the agency's ultimate decision to either grant or deny Petitioners' I-730 petitions in the exercise of discretion, see 8 U.S.C. § 1252(a)(2)(B)(ii), it nonetheless maintains jurisdiction to determine whether the agency has unlawfully withheld or unreasonably delayed the processing of those petitions. Doe v. Risch, 398 F.3d Supp. 3d 647, 654-55 (N.D. Cal. 2019). "Even when no time limits are imposed by the enabling-statute, Respondents have a non-discretionary duty to adjudicate immigration-related petitions 'within a reasonable period of time.'" Id., quoting Islam v. Heinauer, 32 F. Supp. 3d 1063, 1089 (N.D. Cal. 2014). An alternate conclusion "would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." Islam, 32 F. Supp. 3d at 1069.


**VENUE**

8.      Venue is properly in this district pursuant to 28 U.S.C. §§ 1391(e), because Respondents are officers or employees of the United States government, Petitioner Ms. Mendez resides in this district, and no real property is involved in this action.


**STANDING**

9.      Petitioners have standing to bring this action. Respondents have refused to perform their ministerial duty of adjudicating Petitioners' I-730 petitions, and this Court has jurisdiction to redress that injury by ordering Respondents to immediately do so. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).

3

Complaint for Declaratory and Injunctive Relief

**Petitioners**

10.     Petitioner Concely Mendez Rojas resides at 13826 12th Ave SW, Apt. 197, Burien, Washington, 98166.  She is a 36-year-old native and citizen of the Dominican Republic who was granted asylum in the United States on July 9, 2019.  In August 2019, she filed asylee relative petitions (I-730s) with the USCIS for her three young sons.  Those petitions were receipted by the USCIS on August 23, 2019.

11.     Petitioners LBCM, GHM, and WJMM are Ms. Mendez's minor children.  They reside in the Dominican Republic, in the city of Cotui.  They beneficiaries of the asylee relative petitions filed by Ms. Mendez.  Although those petitions were receipted by the USCIS in August 2019, and although Petitioners provided all of the required documentation with their petitions, Respondents have yet to adjudicate these petitions.

**Respondents**

12.     Respondent Loren K. Miller is the Director of the Nebraska Service Center of the United States Citizenship and Immigration Services ("USCIS").  In that capacity, she is responsible for the adjudication of asylee relative petitions filed pursuant to 8 U.S.C. § 1158(b)(3).  The Nebraska Service Center has jurisdiction to adjudicate the I-730 petitions in this case, but has not adjudicated them.  Respondent Miller is sued herein in her official capacity.

13.     Respondent Ur M. Jaddou is the Secretary of the USCIS.  She is responsible for the adjudication of all applications for benefits filed with the USCIS and, as such, is responsible for the adjudication of I-730 petitions filed under 8 U.S.C. § 1158(b)(3). Respondent Jaddou is sued herein in her official capacity.

14.     Respondent Alejandro Mayorkas is the Secretary of the Department of Homeland Security ('DHS").  He is responsible for the administration and enforcement of the Immigration and Nationality Act and, as such, is ultimately responsible for the adjudication of I-730 petitions filed under 8 U.S.C. § 1158(b)(3).  Respondent Mayorkas is sued herein in his official capacity.

4

Complaint for Declaratory and Injunctive Relief

**FACTS**

15.    Ms. Mendez was born in the Dominican Republic on July 21, 1985. Attachment A, Asylee  Relative Petitions and supporting evidence.  Her sons LBCM, GHM, and WJMM were also born in the Dominican Republic.  Id.  Ms. Mendez was forced to flee the Dominican Republic in 2013 because of the severe persecution she faced there at the hands of her former partner.  Upon her arrival into the United States in September 2013, she expressed a fear of being returned to her home country, and after she was found to have a "credible fear" of persecution, she was released and subsequently placed into removal proceedings.  In those proceedings, she applied for asylum and related relief, and she was finally granted asylum by an immigration judge in Seattle, Washington on July 9, 2019.  Id.

16.    The INA provides that "[a] spouse or child . . . of an alien who is granted asylum . . . may . . . be granted the same status as the alien if accompanying, or following to join, such alien."  8 U.S.C. § 1158(b)(3)(A).  The requisite relationship must have existed at the time of the asylum approval.  8 C.F.R. § 208.21(b).  In addition, that relationship must continue to exist both at the time of filing for derivative benefits and at the time of the derivative's admission to the United States.  Id.  The immigration regulations  prescribe the procedure by which spouses and children of asylees can apply for derivative asylee status from outside the United States.  Id.

17.    The asylee must first file a separate Form I-730 (Refugee/Asylee Relative Petition) for each qualifying family member with a designated DHS office in the United States, along with supporting evidence.  8 C.F.R. § 208.21(d).  If the petition is approved, the DHS is required to forward the approved petition to the Department of State "for delivery to the American Embassy . . . having jurisdiction over the area in which the asylee's spouse or child is located."  Id.

18.    The responsibility for determining eligibility for derivative asylee status, and thus whether to approve an I-730 petition, lies with the DHS office in the United States. The adjudication of the I-730 is normally very straightforward, as the DHS is only tasked with: 1. confirming that the requisite relationship existed at the time the asylee was granted asylum; 2. that the requisite relationship

5

Complaint for Declaratory and Injunctive Relief

1   continues to exist; 3. that the petition was filed within two years of the approval of the asylee's

2   application for asylum;  and 4.  that the beneficiary is not ineligible for asylum under the INA.  8

3   C.F.R. § 208.21(b).  The petitions Ms. Mendez filed for her sons unquestionably meet these criteria.

4   19.      In August 2019, just a month after Ms. Mendez was granted asylum, she filed I-730s on behalf

5   of her three sons.  Attachment A; Attachment B, Receipt Notices for I-730 Petitions.  In support of the

6   petitions, Ms. Mendez submitted, among other documents, the asylum approval order from the

7   immigration judge and the birth certificates of her three sons, which established their identities and

8   relationship to her.  Id.

9   20.      The USCIS receipted the I-730 petitions on August 23, 2019.  Attachment B.  To date, though,

10  the USCIS has yet to adjudicate these petitions or take any substantive action in doing so.  This is

11  despite the fact that these petitions have been pending far outside of the agency's own stated

12  processing times, and despite counsel's numerous attempts to inquire into the status of these petitions.

13  Attachment C, Copies of counsel's inquiries sent to the USCIS.[2]  To date, the only response counsel

14  has received from the USCIS was by way of a January 8, 2021 letter, in which the USCIS stated that

15  one of the petitions was awaiting the scheduling of an interview.  Attachment D, Letter from USCIS.

16  No interview has been scheduled thus far, and this response related to just one of the petitions.

17  Moreover, there is no reason why an interview is even required, and even so it has now been more than

18  ten months since that response and no action has been taken by Respondents.  The delay in the

19  adjudication of Petitioners' straightforward petitions is wholly unreasonable.

**ARGUMENT**

I.     **BY REFUSING TO ADJUDICATE PLAINTFFS' I-730 PETITIONS, Respondents
       HAVE VIOLATED THE IMMIGRATION AND NATIONALITY ACT, THE
       IMMIGRATION REGULATIONS, AND THEIR OWN POLICY.**

21.      In August  2019, a little over a month after she was granted asylum, Ms. Mendez filed asylee

---

[2]        Counsel has sent written inquiries and has done online inquiries with the USCIS to
no avail.  Attachment C.

6                                                    Complaint for Declaratory and Injunctive
                                                     Relief

relative petitions on behalf of her sons, with evidence that she is an asylee and that they are her children.  The Nebraska Service Center of the DHS receipted the petitions on August 23, 2019.  To date, Respondents have not adjudicated these straightforward petitions, nor have they provided any time-frame in which they intend to act.  As such, Ms. Mendez and her sons face continued and potentially permanent separation.

22.     The statutory and regulatory framework governing asylee relative petitions is very clear.  Those petitions are adjudicated by the DHS at the Nebraska Service Center, which is tasked with determining whether Ms. Mendez's sons are eligible for benefits as derivative asylees.  This is a very simple undertaking, and normally does not require an interview or further follow-up after the petitions are filed.  Among the factors that the DHS must consider are: (1) whether the petitioner is actually an asylee, 8 C.F.R. § 208.21(a); (2) whether the requisite familial relationship existed at the time the asylum application was approved, 8 C.F.R. § 208.21(b); (3) whether the relationship existed at the time of filing for derivative benefits, id.; (4) whether the asylee relative petition was timely filed, 8 C.F.R. § 208.21(d); and (5) whether the relative is otherwise ineligible for asylum, 8 C.F.R. § 208.21(a).  Ms. Mendez's petitions for her sons unquestionably meet these criteria.

23.     The DHS will approve an I-730 petition unless. "there is evidence of ineligibility in the record . ."  8 C.F.R. § 103.2(b)(8).  Where required evidence is missing, or the evidence does not fully establish eligibility, the DHS must request additional evidence.  Id.  Otherwise, the DHS approves the petition and forwards it to the Embassy for issuance of a visa.  8 C.F.R. § 208.21(d).

24.     In this case, Ms. Mendez submitted an I-730 petition for each of her sons, along with her asylum approval notice from the immigration court, her sons' birth certificates, and photographs of each son to the Nebraska Service Center.  The DHS has not requested any additional evidence.

25.     Although the petitions in this case have now been pending for about 27 months, and although counsel has made repeated attempts to inquire into these delayed petitions, Respondents have still not performed their ministerial duty of adjudicating the petitions.  Given the unreasonable nature of the delay in this case, the Court must order Respondents to immediately cease their unlawful action and

Complaint for Declaratory and Injunctive
Relief

1  perform their ministerial duty of adjudicating the petitions.

2

3  **II.   Respondents HAVE ACTED ARBITRARILY AND CAPRICIOUSLY AND IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY REFUSING TO ADJUDICATE Petitioners' PETITIONS, AND THEY SHOULD BE ORDERED TO IMMEDIATELY PERFORM THEIR MINISTERIAL DUTY OF DOING SO.**

4

5

6  26.   Respondents' refusal to adjudicate Petitioners' I-730 petitions not only violates the law and Respondents' own procedures, but it constitutes arbitrary and capricious agency action.  As such, the Court should also find that Respondents have violated the Administrative Procedure Act.

7

8  27.   The APA provides a cause of action to persons "adversely affected or aggrieved by agency action." 5 U.S.C. § 702.  Under the APA, a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed" and/or "hold unlawful . . . agency action [that is] arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706.  In order to bring a cause of action under the APA, the aggrieved party must first exhaust administrative remedies.  5 U.S.C. § 704.

9

10

11

12

13  28.   "In determining whether agency action is unreasonably delayed under 8 U.S.C. § 705(a), the Ninth Circuit has adopted the so-called TRAC factor test." Brower v. Evans, 257 F.3d 1058, 1068-69 (9th Cir. 2001) (citing Telecomm. Research & Action v. FCC (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984)).   Under that test, the Court should balance these factors:

14

15

16

17

18  1. The time agencies take to make decisions must be governed by a rule of reason.
2. Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3.  Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4.  The Court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5.  The court should also take into account the nature and extent of the interests prejudiced by the delay; and
6.  The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasaonably delayed.

19

20

21

22

23

24  Id.

25

26  29.   In light of the TRAC factors, the Court should conclude that Respondents have unreasonably delayed the adjudication of Petitioners' petitions, and that their actions in this case stand in clear

27

28                                                                  8                 Complaint for Declaratory and Injunctive Relief

violation of the APA and the immigration statutory scheme.  As stated in Section I, <u>supra</u>, Respondents have failed to follow the law and their own policy by not adjudicating Petitioners' I-730 petitions within a reasonable period of time.  Although Ms. Mendez filed the petitions for her three sons in August 2019, along with all of the required evidence, Respondents have refused to take any action whatsoever on these petitions.  Indeed, by the agency's own stated processing times, which are themselves unreasonable, these petitions have been pending far outside of that time-frame.

30.     The first TRAC factor weighs heavily in Petitioners' favor, because the adjudication of the I-730 petitions in this case is by no means complex, and because there is no evidence whatsoever that the delay is in any way attributable to Petitioners.  <u>Doe v. Risch</u>, 398 F. Supp. 3d at 655-56.

31.     The second TRAC factor  - whether Congress has provided a timetable or other indication of the speed in which it expects a case to be processed - similarly tips sharply in Petitioners' favor.  As the Court in <u>Doe v. Risch</u> pointed out, Congress provided a 180-day time-frame in which asylum applications should generally be adjudicated.  <u>Doe v. Risch</u>, 398 F. Supp. 3d at 657.  See also 8 U.S.C. § 1158(d)(5)(A)(iii) and 8 U.S.C. § 15871(b).  Although the 180-day time-frame might be only a benchmark, this is nonetheless a significant factor in Petitioners' favor, as their petitions have been pending far outside of that time-frame, and no justification whatsoever has been provided for this unreasonable delay.

32.     The third and fifth TRAC factors overlap, and require "the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay."  <u>Doe v. Risch</u>, 398 F. Supp. 3d at 657.  Again, these factors weigh heavily in Petitioners' favor.  As the Court in <u>Doe v. Risch</u> explained, "[i]t is undisputed that human health and welfare are at stake where an asylee files a follow-to-join petition for a family member still residing in their native country."  <u>Id</u>.  Thus a delay that might be tolerable in another situation is less tolerable here. <u>Id</u>.  And in this case, as was the case in <u>Doe v. Risch</u>, the delay here involves the ongoing separation of a mother and her three minor children.  <u>Id</u>.

33.     The fourth TRAC factor - considering the effect on the agency's activities of a higher or

Complaint for Declaratory and Injunctive Relief

competing authority - also falls in Petitioners' favor.  As documented, Petitioners' I-730 petitions have already been pending far outside of Respondents' own stated processing times, so Respondents cannot argue that adjudicating these petitions now would be done at the expense of others filed before them.  Nor can they argue that adjudicating these long pending petitions would unduly burden the agency, as the adjudication of these petitions is among the most straightforward of all immigration benefits.  Indeed, the USCIS used to adjudicate these kinds of petitions within just a few months of filing, where there were not eligibility issues involved, such as is the case here.  There is absolutely no justification whatsoever for taking more than two years to adjudicate these petitions, and it would not unduly burden the agency to require it to perform its duty here.

34.     The final TRAC factor also supports Petitioners' position.  That factor makes clear that the Court need not find that Respondents have acted in bad faith to rule against them.  Here, Respondents have provided no time-frame whatsoever in which it intends to adjudicate Petitioners' petitions. They have not responded to counsel's many inquiry requests.  Nor have they indicated why these petitions have been unnecessarily delayed.  Whether their delay is attributable to something nefarious, or whether it is simply the result of incompetence, it is clear that Respondents have not shown that they are acting in good faith.  Thus the final factor further weights in favor of mandamus action here.

35.     Moreover, Respondents have unquestionably acted arbitrarily and capriciously in refusing to adjudicate Petitioners' petitions. Despite counsel's repeated inquiries, Respondents have provided absolutely no justification for the unreasonable delay, nor have they indicated when they intend to take action on these cases. The only response counsel has received so far was the January 2021 letter, which referenced just one petition, and which stated that it was awaiting the scheduling of an interview.  It is extremely rare for the USCIS to schedule an interview in a case like this, where a parent is filing I-730 petitions for children outside of the United States.  Regardless, though, the agency has not scheduled such an interview, and these petitions have been pending for an unreasonable length of time.  Respondents' refusal to adjudicate the petitions in this case

Complaint for Declaratory and Injunctive Relief

1   constitutes arbitrary and capricious action and violates the APA.

2   36.   This Court unquestionably has jurisdiction over Petitioners' claims for relief.   Although

3   this Court would lack jurisdiction over the agency's ultimate decision to grant or deny Petitioners'

4   I-730 petitions in the exercise of discretion, see 8 U.S.C. § 1252(a)(2)(B)(ii), it nonetheless

5   maintains jurisdiction to determine whether the agency has unlawfully withheld or unreasonably

6   delayed the processing of those petitions.   Doe v. Risch, 398 F.3d Supp. 3d 647, 654-55 (N.D. Cal.

7   2019).   "Even when no time limits are imposed by the enabling-statute, Respondents have a non-

8   discretionary duty to adjudicate immigration-related petitions 'within a reasonable period of

9   time.'" Id., quoting Islam, 32 F. Supp. 3d at 1089.   An alternate conclusion "would be to sanction

10  the perpetual delay of governmental obligations that are clearly mandated by law." Islam, 32 F.

11  Supp. 3d at 1069.

12
13  **III.   BECAUSE Respondents HAVE A MINISTERIAL DUTY TO ADJUDICATE THE I-730 PETITIONS, AND BECAUSE THEY HAVE UNREASONABLY DELAYED THEIR EXECUTION OF THAT DUTY, Petitioners ARE ENTITLED TO A WRIT OF MANDAMUS.**
14

15  37.   Assuming, arguendo, that the Court rejects Petitioners' first two arguments, it should find

16  that they are entitled to a writ of mandamus pursuant to 28 U.S.C. § 1361.   Respondents have a

17  clear and nondiscretionary duty to adjudicate Petitioners' I-730 petitions, and they have

18  unreasonably failed to do so.

19  38.   Mandamus relief is available to compel a government official to perform a duty owed to an

20  individual if: "(1) the individual's claim is clear and certain; (2) the official's duty is 'ministerial

21  and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available."

22  Azurin v. Von Raab, 803 F.2d 993, 995 (9th Cir. 1986), citing Fallini v. Hodel, 783 F.2d 1343,

23  1345 (9th Cir. 1986).

24  39.   In this case, all three requirements are satisfied.   First, Petitioners' claim is clear; they are

25  entitled to have their I-730 petitions adjudicated by the USCIS, and they request that the agency

26  simply perform this task.

27

28                                          11                Complaint for Declaratory and Injunctive
                                                             Relief

40.     Second, Respondents' duty in this case is ministerial.  Petitioners are not asking the Court to order Respondents to approve their petition; they are simply asking the Court to order Respondents to adjudicate the petitions in accordance with the statute and regulations.  This task is ministerial.

41.     Third, and finally, if the Court rejects Petitioners' statutory arguments, a writ of mandamus will be the only remedy available to compel Respondents to adjudicate Petitioners' petitions.[3]

42.     The "extraordinary remedy," Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1997), of mandamus is warranted in this case because of the irreparable consequences of further delay in processing the visa.  As argued above, Ms. Mendez fled the Dominican Republic in 2013, and had to leave behind her three young sons.  Ms. Mendez has been separated from her three sons for more than eight years, and they have now been waiting about 2.5 years for their petitions to be approved.   For this reason, a writ of mandamus is warranted in this case.  Respondents are certainly acting unreasonably, under these circumstances, by refusing to adjudicate the petitions.

## RELIEF REQUESTED

WHEREFORE, Petitioners pray that this Court:

(1)     Accept jurisdiction over this action;

(2)     Declare that Respondents' actions challenged herein violate the Immigration and Nationality Act, the immigration regulations, the Administrative Procedure Act, and Respondents' own policies;

(3)     Order Respondents to immediately adjudicate Petitioners' petitions;

(4)     Grant attorney's fees and costs of court; and

---

[3]      Because the APA allows an aggrieved party to "compel agency action . . . unreasonably delayed," and because the mandamus statute requires that no other remedy be available, "technically mandamus is no longer available" in challenges to unreasonably delayed agency action.  Yu v. Brown, 36 F. Supp. 2d 922, 928 (D.N.M. 1999).  However, "the mandatory injunction authorized under the APA 'is essentially in the nature of mandamus relief.'" Id.

Complaint for Declaratory and Injunctive Relief

(5)     Grant such other and further relief as this Court deems just and proper under the circumstances.

Dated: December 8, 2021                              Respectfully submitted,


                                                    S/Vicky Dobrin
                                                    Vicky Dobrin
                                                    Dobrin & Han, PC
                                                    Attorneys for Petitioners

Complaint for Declaratory and Injunctive Relief

**CERTIFICATE OF SERVICE**

**RE: <u>Concely Mendez Rojas, et al v. Miller, et al</u>**

I, **Vicky Dobrin**, am an employee of Dobrin & Han, PC. My business address is 705 Second Avenue, Suite 905, Seattle, Washington 98104. I do hereby certify that on **December 8, 2021**, I **will cause to be delivered via certified mail** a true and correct copy of the attached document, described as:

**Complaint for Declaratory and Injunctive Relief**

on the following party(ies):

Office of the United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101

Upon issuance of the summons by the Court, I **will cause to be delivered via certified mail** a true and correct copy of the attached documents to:

Office of the United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101

Attorney General Merrick Garland
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-0001

Loren K. Miller
Director of the Nebraska Service Center
USCIS
850 S Street
Lincoln, NE 68508

Ur M. Jaddou
Director of the USCIS
20 Massachusetts Ave NW
Washington, DC 20529

The Honorable Alejandro Mayorkas
Secretary of Homeland Security
Washington, D.C. 20528

Executed in Seattle, Washington, on December 8, 2021.


s/ Vicky Dobrin
Vicky Dobrin

14